UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ABIGAIL LIMA DA SILVA O'LEARY, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>PATRICIA HYDE, *in her official capacity as Acting Field Office Director of Enforcement and Removal Operations, Boston Field Office, Immigration and Customs Enforcement*, et al., )<br>)<br>Respondents. ) | No. 2:26-cv-00036-JAW |

**ORDER ON MOTION TO DISMISS**

Because the court lacks jurisdiction over a noncitizen's challenge to an Immigration Judge's decision to deny her bond and the noncitizen's challenge to her conditions of confinement are moot, the court grants the government's motion to dismiss the noncitizen's petition for writ of habeas corpus.

**I.    BACKGROUND**[1]

Abigail Lima Da Silva O'Leary, a resident of Massachusetts, is a citizen of Brazil who entered the United States on a B-2 visitor visa in 2017.  *Verified Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241* (ECF No. 17) (*Pet.*).  Ms. O'Leary is married to a U.S. citizen and is pursuing adjustment of status based on a pending

---

[1]    For the purposes of Respondents' motion to dismiss and consistent with the parties' stipulation, the Court reviews the relevant facts as pleaded in Ms. O'Leary's verified petition and accompanying attachments.  *Verified Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241* (ECF No. 17); *Resp'ts' Mot. to Dismiss* (ECF No. 10).

I-130 petition filed by her spouse. *Id.* ¶ 1. She has also filed an I-485 application for adjustment of status with the Executive Office of Immigration Review. *Id.*

Ms. O'Leary also reports that she overstayed her B-2 visa and is subject to removal proceedings. *Id.* Specifically, on October 9, 2025, U.S. Immigration and Customs Enforcement (ICE) arrested Ms. O'Leary and detained her at Cumberland County Jail pending her removal proceedings.[2] *Id.* ¶ 2. On October 16, 2025, Ms. O'Leary appeared before an Immigration Judge for a bond hearing, where the Immigration Judge determined Ms. O'Leary posed a danger to the community and denied her bond. *Id.* ¶ 3; *Mot. to Dismiss* (ECF No. 10), Attach. 2, *Order of the Immigration Judge* (*IJ Order*); *id.*, Attach. 3, *Bond Memo*. On October 28, 2025, Ms. O'Leary appealed to the Board of Immigration Appeals (BIA) the Immigration Judge's bond denial, which Ms. O'Leary asserts remains pending. *Pet.* ¶ 4.

On January 21, 2026, Abigail Lima Da Silva O'Leary filed a petition for writ of habeas corpus, which she later supplemented with a verified petition on February 19, 2026. *Id.*; *Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241* (ECF No. 1). In her petition, Ms. O'Leary alleges her bond hearing was constitutionally inadequate, depriving her of her due process right to "a meaningful custody hearing."

---

[2] In her petition, Ms. O'Leary alleges she was arrested without a "judicial warrant." *Id.* ¶ 2. In response, Respondents provided a copy of the I-200 administrative warrant authorizing Ms. O'Leary's October 9, 2025 arrest as an attachment to their motion to dismiss. *Resp'ts' Mot. to Dismiss*, Attach. 1, *Warrant for Arrest of Alien*. The Court understands that Ms. O'Leary was saying that she had not been arrested pursuant to a judicial arrest warrant, which would be true, and instead was arrested pursuant to an administrative arrest warrant, which would also be true. However, in her response opposing Respondents' motion to dismiss, Ms. O'Leary is silent about the I-200 arrest warrant and does not reallege she was arrested without a warrant. *Pet'r's Resp. in Opp'n to Resp'ts' Mot. to Dismiss* (ECF No. 14). The Court therefore accepts Respondents' representation that Ms. O'Leary was arrested pursuant to an I-200 administrative warrant.

*Pet.* ¶ 5. Ms. O'Leary's petition also challenges her conditions of confinement, explaining that, due to her asthma, she "faces urgent medical and safety concerns" regarding her risk of exposure to COVID-19. *Id.* ¶ 6.

On January 21, 2026, shortly after Ms. O'Leary filed her petition, the Court issued a seventy-two-hour emergency stay, temporarily enjoining Respondents from transferring Ms. O'Leary outside the District of Maine. *Emer. Order Concerning Stay of Transfer or Removal* (ECF No. 2) (*Emer. Order*). The following day, January 22, 2026, Respondents filed an emergency motion requesting permission to transfer Ms. O'Leary to the ICE Boston Field Office, located at 1000 District Avenue, Burlington, Massachusetts, because Cumberland County Jail (CCJ), Ms. Oleary's current detention site, had no additional bed space. *Resp'ts' Emer. Mot. to Transfer* at 1-2 (ECF No. 6). That same day, the Court entered the following order, granting Respondents' emergency motion.

> Based on Respondents' representations that a housing emergency exists at [CCJ] that makes transfer to Massachusetts imperative, and its further representation that the Court will have ongoing jurisdiction over the case and that Respondents will not raise venue as an issue in its responses, the Court hereby modifies the January 21, 2026 emergency stay to permit Ms. O'Leary's transfer to the District of Massachusetts consistent with Respondents' representations in its emergency transfer motion. Respondents are enjoined from transferring Ms. O'Leary outside the District of Massachusetts and District of Maine for the period of at least seventy-two hours from the date and time of this amended order. The Court further orders Respondents provide Ms. O'Leary reasonable access to counsel during the period of her detention in Massachusetts.

*Order* (ECF No. 7) (*Am. Emer. Order*).

The next morning, on January 23, 2026, Ms. O'Leary filed a motion requesting the Court issue an order requiring Respondents to return Ms. O'Leary to the District

3

of Maine. *Mot. to Modify Emer. Order and Other Relief* (ECF No. 8). In her motion, Ms. O'Leary alleged her transfer violated the Court's January 21, 2026 no-transfer order because Respondents removed Ms. O'Leary from the District of Maine before the Court issued is amended emergency no-transfer order. *Id.* ¶ 10. Ms. O'Leary's motion also challenged Respondents' stated emergency basis for their requested modified no-transfer order, alleging that CCJ, based on available information, "was not operating at capacity" but rather had "ample capacity" to house detainees, like Ms. O'Leary. *Id.* ¶ 8. Accordingly, Ms. O'Leary sought an order from this Court finding Respondents violated the Court's January 21, 2026 no-transfer order, and as an appropriate sanction for this violation, an order requiring Respondents to release Ms. O'Leary or, alternatively, to return her to CCJ or another appropriate facility within the District of Maine. *Id.* at 5.

Later that same day, January 23, 2026, Respondents filed a motion to dismiss Ms. O'Leary's petition, *Mot. to Dismiss*, and a response to Ms. O'Leary's motion, confirming ICE transferred Ms. O'Leary outside the District of Maine before the Court issued its amended no-transfer order, and acknowledging Respondents' transfer of Ms. O'Leary violated the Court's January 21, 2026 no-transfer order. *Resp. to Pet'r's Mot.* at 2 (ECF No. 9). Respondents further explained that they will no longer house immigration detainees at the CCJ.[3] *Resp. to Pet'r's Mot.* at 2.

---

[3]  Counsel for Respondents state that Respondents' transfer of Ms. O'Leary prior to the Court issuing its amended no-transfer order and the fact that ICE will no longer house immigration detainees at CCJ were not known to counsel at the time they filed Respondents' emergency transfer motion. *Id.* The Court accepts counsel's representation and does not impute to their counsel Respondents' conceded violation of the Court's January 21, 2026 order.

4

Given these developments, the Court held a teleconference of counsel later that evening on January 23, 2026, and, upon the parties' agreement, issued the following order.

> In light of the Government's representation that Abigail Lima Da Silva O'Leary was transferred to Massachusetts in direct violation of this Court's Orders, ECF Nos. 2, 7, the Court ORDERS Ms. O'Leary's immediate release on personal recognizance, subject to standard conditions of release on personal recognizance, while the merits of her underlying habeas petition, ECF No. 1, are pending. The Court further ORDERS the Government cannot re-detain Ms. O'Leary while the merits of her habeas petition are pending.

*Min. Entry* (ECF No. 12) (*Release Order*). At the teleconference, the parties agreed the Court's release order resolved Ms. O'Leary's motion to return her to the District of Maine, *Order* (ECF No. 13) (*Order Mooting Pet'r's Mot. to Modify Emer. Order and Other Relief*), and set a schedule to complete briefing on Respondents' motion to dismiss Ms. O'Leary's petition. *Min Entry*.

On February 13, 2026, Ms. O'Leary filed her response, opposing Respondents' motion to dismiss. *Pet'r's Resp. in Opp'n to Resp'ts' Mot. to Dismiss* (ECF No. 14) (*Pet'r's Opp'n*). On February 18, 2026, Respondents filed their reply, and the Court took Respondents motion to dismiss under advisement on February 19, 2026. *Reply in Further Supp. of Mot. to Dismiss* (ECF No. 15) (*Resp'ts' Reply*).

## II. THE PARTIES' POSITIONS

### A. Abigail Lima Da Silva O'Leary's Petition for writ of Habeas Corpus

Ms. O'Leary's petition for writ of habeas corpus alleges her detention violates the Immigration Nationality Act (INA) and the Due Process Clause of the Fifth Amendment of the United States Constitution. *Pet.* at 1-2, ¶¶ 24-60. Specifically,

5

Ms. O'Leary maintains that her bond hearing before an Immigration Judge was constitutionally inadequate and that, given Ms. O'Leary's serious medical needs and the CCJ's COVID-19 conditions and procedures, her conditions of confinement are unreasonably harsh and dangerous. *Id.* She seeks, among other remedies, a writ of habeas corpus ordering her immediate release or, in the alternative, an order requiring Respondents both to provide her a constitutionally adequate bond hearing and to take immediate steps to address her health concerns related to her conditions of confinement. *Id.* at 17-20.

### B. Respondents' Motion to Dismiss

Respondents oppose and move to dismiss Ms. O'Leary's petition for writ of habeas corpus on the grounds that the Court lacks jurisdiction over her habeas claims pursuant to the jurisdiction-stripping provisions of the INA, 8 U.S.C. §§ 1252(b)(9) and 1226(e). *Mot. to Dismiss* at 1, 5-7. Should the Court determine it has jurisdiction to review Ms. O'Leary's petition, Respondents maintain that the Court should decline to grant her requested relief. *Id.* at 7-9. Finally, Respondents maintain Ms. O'Leary's January 23, 2026 release moots her conditions of confinement claim. *Id.* at 9. Accordingly, Respondents move to dismiss Ms. O'Leary's petition. *Id.* at 9-10.

### C. Abigail Lima Da Silva O'Leary's Opposition to the Motion to Dismiss

Ms. O'Leary opposes Respondents' motion to dismiss, arguing that neither §§ 1252(b)(9) nor 1226(e) strips this Court of jurisdiction over her claims because she raises a due process claim to the constitutional adequacy of her bond hearing and does not seek to relitigate the substance of the Immigration Judge's discretionary

6

bond determination. *Pet'r's Opp'n* at 2, 8-15. Moreover, because the Court retains jurisdiction to review her claims and her habeas petition plausibly alleges a due process violation, Ms. O'Leary argues dismissal is unwarranted. *Id.* 15-16. Lastly, Ms. O'Leary maintains her conditions of confinement are not mooted by her release. *Id.* at 16-17. Accordingly, Ms. O'Leary asks this Court to deny Respondents' motion to dismiss. *Id.* at 18.

### D. Respondents' Reply

In reply, Respondents reiterate and further support their motion's argument that dismissal is warranted on jurisdictional grounds. *Resp'ts' Reply* at 1-3. Respondents further maintain that Ms. O'Leary's petition and opposition to Respondents' motion to dismiss fail to prove subject matter jurisdiction. *Id.* at 3-4. Finally, Respondents explain that the "unique facts of this case invariably demonstrate [Ms. O'Leary] . . . will not be returned to ICE custody at the CCJ," mooting her conditions of confinement claim. *Id.* at 4-5. Accordingly, Respondents ask this Court to grant the motion to dismiss Ms. O'Leary's petition. *Id.* at 5.

## III. LEGAL STANDARD

### A. Section 1252(b)(9)

The INA "channels immigration claims through the administrative process and sharply limits judicial review while that process is ongoing." *Sicha v. Bernal*, No. 1:25-cv-00418-SDN, 2025 U.S. Dist. LEXIS 169007, at *10 (D. Me. Aug. 29, 2025) (citing 8 U.S.C. § 1252(b)(9)). Specifically, § 1252(b)(9), known as the "zipper clause," provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9). In other words, the zipper clause "squeezes claims relating to removal into the administrative process, only to release them for judicial review once a final administrative order is issued." *Sicha*, 2025 U.S. Dist. LEXIS 169007, at * 10. Until a final order of removal issues, § 1252(b)(9) strips federal courts of jurisdiction to hear challenges to removal proceedings. 8 U.S.C. § 1252(b)(9) ("[N]o court shall have jurisdiction, by habeas corpus . . . or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact").

Despite the apparent breadth of the zipper clause, the First Circuit holds that an immigration detainee may raise claims "collateral to" the removal process, such as those that "cannot effectively be handled through the available administrative process," in federal court. *Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 10-11 (1st Cir. 2007). For example, "district courts retain jurisdiction over challenges to the *legality* of detention in the immigration context," but not over challenges to the proceedings itself. *Id.* (emphasis supplied).

As relevant here, for the government to subject a noncitizen to discretionary detention pursuant to § 1226(a), "due process requires the government to either (1) prove by clear and convincing evidence that she poses a danger to the community or (2) prove by a preponderance of the evidence that she poses a flight risk." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021). An Immigration Judge's "decision to

8

continue detaining a noncitizen [pursuant to § 1226(a)] may be further appealed to the BIA." *Id.* at 26 (citing 8 C.F.R. § 236.1(d)(3)).

### B.     Section 1226(e)

Similarly, § 1226(e) severely limits a district court's jurisdiction to review an immigration detainee's challenge to discretionary detention under § 1226(a). Specifically, § 1226(e) provides that "the Attorney General's discretionary judgment regarding the application of [§ 1226] shall not be subject to review" and "[n]o court may set aside any action or decision by the Attorney General under this section regarding the . . . denial of bond or parole" of any noncitizen. 8 U.S.C. § 1226(e). This provision essentially strips district courts of jurisdiction to hear challenges to an Immigration Judge's "discretionary decision to keep [a noncitizen] in detention." *Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 689 (D. Mass. 2018). This provision removes federal court jurisdiction to hear challenges to an "immigration judge's weighing of the evidence and exercise of discretion with respect to dangerousness." *Diaz Ortiz v. Smith*, 384 F. Supp. 3d 140, 144 (D. Mass. 2019); *see also Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 688 (D. Mass. 2018) ("Congress has eliminated judicial review of discretionary custody determinations").

Section 1226(e) does not, however, deprive them of jurisdiction to hear constitutional challenges to "the extent of the Government's detention authority under the 'statutory framework' as a whole." *Hernandez-Lara*, 10 F.4th at 33-34 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 295-96 (2018)). District courts in the First Circuit have reviewed an Immigration Judges' bond determinations for

compliance with due process. *See, e.g., Garcia v. Hyde*, No. 25-cv-00585, 2025 U.S. Dist. LEXIS 253787, at *11-12, *15 (D.R.I. Dec. 3, 2025) (granting habeas relief); *Mayancela Mayancela v. FCI Berlin*, No. 25-cv-00348, 2025 U.S. Dist. LEXIS 226280, at *6-7 (D.N.H. Nov. 18, 2025) (denying habeas relief); *Dos Reis v. Vitello*, No. 25-cv-10497, 2025 WL 1043434, at *13-15 (D. Mass. Apr. 8, 2025) (denying habeas relief). To show that an Immigration Judge failed to comply with due process, a noncitizen must either "point to the language of the immigration court judge's opinion or demonstrate that 'the evidence itself could not—as a matter of law—have supported' the immigration judge's decision to deny bond." *Diaz Ortiz v. Smith*, 384 F. Supp. 3d 140, 143 (quoting *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 240 (W.D.N.Y. 2019)). Given the highly circumscribed nature of judicial review in this context, courts cannot override an immigration judge's bond decision simply because they "might have reached a different result if considering the issue de novo or in the context of a bail review in a criminal case." *Massingue v. Streeter*, No. 19-cv-30159, 2020 U.S. Dist. LEXIS 64600, at *16 (D. Mass. Apr. 14, 2020). Rather, habeas relief is appropriate only if the Immigration Judge's "exercise of discretion in denying bond was so arbitrary that it would offend fundamental tenets of due process." *Diaz Ortiz*, 384 F. Supp. 3d at 144 (quoting *Pratt v. Doll*, No. 17-cv-01020, 2019 U.S. Dist. LEXIS 26976, at *10 (M.D. Pa. Feb. 20, 2019)).

### IV.  DISCUSSION

#### A.  Jurisdictional Challenges

Based on the available evidence, the Court concludes that it does not have

jurisdiction to review Ms. O'Leary's challenge to the Immigration Judge's bond denial. Ms. O'Leary's challenge falls squarely within the category of claims that the INA strips from the district courts' jurisdiction, and the evidence before this Court does not suggest that the Immigration Judge's bond denial violated due process. Instead, Ms. O'Leary may seek relief by appealing to the BIA, and ultimately, the First Circuit.

First, Ms. O'Leary's claim against her bond denial is not "collateral to" her removal proceedings. *Aguilar*, 520 F.3d at 10-11. Ms. O'Leary argues that the Immigration Judge "failed to apply the constitutionally required burdens and standards governing § 1226(a) custody redeterminations in this Circuit." *Petr's' Opp'n* at 8. However, this is precisely the category of claims this Court has consistently found the INA has channeled through the administrative process and away from the district court. *See, e.g.*, *Nunes v. Joyce*, 2:25-cv-00357-JAW, 2025 U.S. Dist. LEXIS 191132, at *13-14 (D. Me. Sep. 29, 2025) ("It is not uncommon for a losing party to believe, even sincerely, that a judge failed to properly evaluate evidence and issued an erroneous ruling, but this type of finding goes to the heart of the Immigration Judge's determination at the bond hearing and the Court cannot conclude it is collateral to the removal proceeding").

Second, although Ms. O'Leary is correct that § 1252(b)(9) does not strip a district court of jurisdiction to review the legality of her detention, the evidence before this Court does not demonstrate she was denied due process such that her detention may be illegal. In *Trega v. Bondi*, this Court rejected an immigration detainee's

11

argument "that [an] Immigration Judge failed to provide her with due process when the Immigration Judge held a detention hearing pursuant to *Hernandez-Lara*." No. 2:25-cv-00643-JAW, 2026 U.S. Dist. LEXIS 8737, at *10 (D. Me. Jan. 16, 2026). As explained above, Ms. O'Leary's argument that "the evidence cited in the custody proceedings did not establish a present, unmitigable risk under the governing evidentiary standards," *Pet'r's Opp'n* at 12, fits well within the category of challenge that the INA removed from this Court's jurisdiction.

Moreover, her claims of fundamental unfairness are belied by the evidence before this Court. Rather, Ms. O'Leary received constitutionally required due process when she appeared before an Immigration Judge who reviewed and heard evidence, held the Government to its burden of proof, and found by clear and convincing evidence that Ms. O'Leary is a danger to the community.[4]  *See IJ Order*; *Bond Memo*. (Denying Ms. O'Leary bond after "weigh[ing] the recency of [her] DUI and that the police report in the record was highly detailed and reliable" against Ms. O'Leary's argument that many of her criminal "charges were dismissed and that she has

---

[4]   Ms. O'Leary argues that the Immigration Judge's failure to consider "less restrictive alternatives" to detention violates due process. *Pet'r's Opp'n* at 13. However, Ms. O'Leary overreads the First Circuit's guidance in *Hernandez-Lara*, which held that due process places the burden of proof on the Government, not the immigration detainee, during a § 1226(a) bond hearing, to prove the immigration detainee poses a danger to the community by clear and convincing evidence or a flight risk by a preponderance of the evidence. *Hernandez-Lara*, 10 F.4th at 39-41. So far, the First Circuit has not interpreted *Hernandez-Lara* to require an Immigration Judge to consider alternatives to detention. *See Doe v. Tompkins*, 11 F.4th 1, 2 (finding an immigration detainee "entitled to a new hearing before an IJ at which the government will bear the burden of proving either dangerousness or flight risk in order to continue det[ention]," but expressly withholding ruling on whether the Immigration Judge must consider alternatives to detention because the parties had not raised the issue on appeal). Considering the First Circuit's silence on alternatives to detention and the fact that the Court otherwise concludes that Ms. O'Leary's bond hearing satisfies the due process requirements articulated in *Hernandez-Lara*, the Court declines at this time to extend *Hernandez-Lara* to further require an Immigration Judge to consider alternatives to detention. In other words, the Court is chary about expanding First Circuit law without express authority from the First Circuit.

12

stopped drinking," and then concluding that Ms. O'Leary "repeatedly violated laws in the past and put people in the community in danger when she operated a vehicle under the influence"). Furthermore, Ms. O'Leary retains the "additional layer of due process protection," through her pending BIA appeal, *Trega*, 2026 U.S. Dist. LEXIS 8737, at *10-11, and she had failed to demonstrate how her claims "cannot effectively be handled through the available administrative process." *Aguilar*, 510 F.3d at 11.

For the same reasons, the Court concludes that § 1226(e) removes the Court's jurisdiction to review Ms. O'Leary's challenge to the Immigration Judge's bond denial. *See Demore v. Kim*, 538 U.S. 510, 516 (2003) (holding that § 1226(e) bars an immigration detainee's challenge to "a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release"); *Oliveira v. Joyce*, No. 2:25-cv-00291-LEW, 2025 U.S. Dist. LEXIS 202195, at *3 (D. Me. Oct. 14, 2025) ("This Court lacks the jurisdiction to award relief to Petitioner by means of a habeas order that directly reviews the immigration judge's bond determination") (citing 8 U.S.C. §§ 1226(e), 1252(a)(2), 1252(b)(9)); *Diaz Ortiz v. Smith*, 384 F. Supp. 3d 140, 144 (D. Mass. 2019) (holding § 1226(e) strips district courts of jurisdiction to hear challenges to an "immigration judge's weighing of the evidence and exercise of discretion with respect to dangerousness").

Similarly, the sister district caselaw on which Ms. O'Leary relies does not overcome the consistent approach from this District in applying *Hernandez-Lara* to cases presenting similar facts and legal challenges. *See Trega*, 2026 U.S. Dist. LEXIS 8737, at *9-12; *Oliveira*, 2025 U.S. Dist. LEXIS 202195, at *3; *Nunes*, 2025 WL

2772578, at *11-14. Nor does Ms. O'Leary provide any compelling argument or distinguishing factors that suggests the Court today should break from this approach under *Hernandez-Lara*.

Accordingly, the Court finds it lacks jurisdiction to review Ms. O'Leary's claims regarding the Immigration Judge's bond denial. The Court therefore grants Respondents' motion to dismiss on jurisdictional grounds and does not reach the merits of those claims.

### B. Conditions of Confinement

As for Ms. O'Leary's challenge to her conditions of confinement, the Court agrees with Respondents that her claims are moot. "Article III [of the United States Constitution] prohibits federal courts from deciding 'moot' cases or controversies—that is, those in which the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Unión de Empleados de Muelles de P.R., Inc. v. Int'l Longshoremen's Ass'n*, 884 F.3d 48, 57 (1st Cir. 2018). "[E]ven if a suit present[s] a live dispute when filed, if events change 'such that . . . the complaining party winds up with all the relief the federal court could have given [it],' the case is 'moot' and must be dismissed." *Calvary Chapel of Bangor v. Mills*, 52 F.4th 40, 46-47 (1st Cir. 2022). As relevant here, courts generally recognize that a detainee's request for facility-specific injunctive relief may be mooted by release. *See Ford v. Bender*, 768 F.3d 15, 29 (1st Cir. 2014) ("A prisoner's challenge to prison conditions or policies is generally rendered moot by his transfer or release").

Ms. O'Leary challenges the conditions of confinement specific to the CCJ, a

facility that Respondents maintain will no longer house immigration detainees.[5] *Resp'ts' Reply* at 4-5. In her petition, Ms. O'Leary argues that "her *current* confinement" at Cumberland County Jail presented an "unreasonably harsh and dangerous . . . risk of COVID-19," because she "has had known exposure to COVID-19 *at the facility*." *Pet.* at 2-3 (emphasis supplied); *id.* ¶ 43-46. In other words, because Ms. O'Leary's conditions of confinement arise from a claim about exposure to COVID-19 at a facility where there is no reasonable prospect she will be detained again, there is no evidence before this Court to find that the challenged conditions of confinement are "reasonably expected to recur." *Friend of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). Ms. O'Leary's conditions of confinement claim against conditions at the CCJ are therefore moot, and the Court will grant Respondent's motion to dismiss her claim accordingly.

C.   **Current Status**

On January 23, 2026, the Court ordered Respondents to release Ms. O'Leary on her personal recognizance, subject to standard conditions of release on personal recognizance, and further ordered Respondents not to re-detain Ms. O'Leary while the merits of her habeas petition are pending. *Release Order*. In granting Respondents' motion to dismiss, however, the January 23, 2026 release order will expire upon the Court's dismissal of Ms. O'Leary's verified petition. The Court therefore clarifies that Ms. O'Leary remains subject to the standard conditions of her

---

[5]   For purposes of this ruling, the Court accepts the Respondents' representation as true. If Ms. O'Leary is detained at the CCJ in the future, she may file a new conditions of confinement claim, based on the then existing conditions.

release on personal recognizance. However, Respondents are no longer barred from re-detaining Ms. O'Leary.[6]

## V. CONCLUSION

The Court GRANTS Respondents Motion to Dismiss (ECF No. 10). Accordingly, the Court DISMISSES without prejudice Abigail Lima Da Silva's Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 17) for lack of subject matter jurisdiction as to her claims related to her October 16, 2025 bond hearing before and Immigration Judge and for mootness as to her claims related to her conditions of confinement. The Court further DISMISSES as moot Abigail Lima Da Silva's unverified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 1).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 11th day of March, 2026

---

[6] If the Respondents re-detain Ms. O'Leary, the Court urges counsel for both Ms. O'Leary and Respondents to work together to make her submission to re-detention as non-confrontational as possible with prior notice to Ms. O'Leary's counsel.