UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| ABIGAIL LIMA DA SILVA O'LEARY, | ) ) ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | No. 2:26-cv-00036-JAW |
| PATRICIA HYDE, in her official capacity as Acting Field Office Director of Enforcement and Removal Operations, Boston Field Office, Immigration and Customs Enforcement, et al., | ) ) ) ) ) ) ) ) | |
| Respondents. | ) | |

### ORDER ON MOTION FOR CONTINUATION OF ENLARGEMENT PENDING APPEAL

A noncitizen seeks to continue her release from immigration detention while she appeals this court's order dismissing her petition for writ of habeas corpus. The court finds the circumstances in this case warrant staying its judgment pending the noncitizen's appeal. The court therefore continues its prior release order while she pursues her appeal to the Court of Appeals for the First Circuit.

### I.    BACKGROUND[1]

#### A.    Procedural History

On January 21, 2026, Abigail Lima Da Silva O'Leary filed a petition for writ of habeas corpus, seeking her immediate release from immigration detention. *Pet. for*

---

[1]    Consistent with the parties' stipulation, the Court reviews the relevant facts as pleaded in Ms. O'Leary's verified petition and accompanying attachments. *Verified Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241* (ECF No. 17); *Mot. to Dismiss* (ECF No. 10).

*Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241* (ECF No. 1). That same day, the Court issued a seventy-two-hour emergency stay, temporarily enjoining the Respondents from transferring Ms. O'Leary outside the District of Maine. *Emer. Order Concerning Stay of Transfer or Removal* (ECF No. 2) (*Emer. Order*). However, on January 22, 2026, the Respondents violated the Court's no-transfer order when they removed Ms. O'Leary from the District of Maine. *Min. Entry* (ECF No. 12) (*Release Order*). As sanction, the Court ordered Ms. O'Leary released on personal recognizance pending resolution of her habeas petition. *Id.* On March 11, 2026, the Court granted the Respondents' motion to dismiss Ms. O'Leary's petition, concluding that (1) the Court lacked jurisdiction to review her challenge to an Immigration Judge's decision to deny her bond and (2) that her conditions of confinement claim was moot. *Order on Mot. to Dismiss* (ECF No. 27). Although the January 23 release order expired upon the Court's dismissal of Ms. O'Leary's habeas petition, *id.*, the Court continued, on an interim basis, the January 23 release order pending the Court's review of the merits of Ms. O'Leary's motion for continuance of enlargement pending appeal. *Order* (ECF No. 32).

On March 12, 2026, Ms. O'Leary filed a motion to continue her release on personal recognizance pending her appeal of the Court's order dismissing her habeas petition. *Pet'r's Mot. for Continuation of Enlargement Pending Appeal* (ECF No. 29) (*Pet'r's Mot.*). The next day, Ms. O'Leary filed her notice of appeal. *Notice of Appeal* (ECF No. 33). On March 23, 2026, the Respondents filed their response, opposing Ms. O'Leary motion to continue her release pending appeal. *Resp'ts' Resp. to Pet'r's*

2

*Mot. for Continuation of Enlargement Pending Appeal* (ECF No. 38) (*Resp'ts' Opp'n*). On March 31, 2026, Ms. O'Leary filed her reply. *Pet'r's Reply in Supp. of Mot. for Continuation of Enlargement Pending Appeal* (ECF No. 40) (*Pet'r's Reply*).

**B.    The Petitioner's Prior Proceedings and Petition for Writ of Habeas Corpus**

Abigail Lima Da Silva O'Leary, is a Massachusetts resident and citizen of Brazil who entered the United States on a B-2 visitor visa in 2017. *Verified Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241* (ECF No. 17) (*Pet.*). Ms. O'Leary is married to a U.S. citizen and is pursuing adjustment of status based on a pending I-130 petition filed by her spouse. *Id.* ¶ 1. She has also filed an I-485 application for adjustment of status with the Executive Office of Immigration Review. *Id.*

Ms. O'Leary overstayed her B-2 visa and is subject to removal proceedings, and, on October 9, 2025, U.S. Immigration and Customs Enforcement (ICE) arrested Ms. O'Leary and detained her at Cumberland County Jail pending her removal proceedings.[2] *Id.* ¶¶ 1-2. On October 16, 2025, Ms. O'Leary appeared before an Immigration Judge for a bond hearing, where the Immigration Judge determined Ms. O'Leary posed a danger to the community and denied her bond. *Id.* ¶ 3; *Mot. to Dismiss* (ECF No. 10), Attach. 2, *Order of the Immigration Judge* (*IJ Order*); *id.*, Attach. 3, *Bond Memo.* On October 28, 2025, Ms. O'Leary appealed to the Board of

---

[2]    In her petition, Ms. O'Leary alleges she was arrested without a "judicial warrant." *Id.* ¶ 2. In response, the Respondents provided a copy of the I-200 administrative warrant authorizing Ms. O'Leary's October 9, 2025 arrest as an attachment to their motion to dismiss. *Resp'ts' Mot. to Dismiss*, Attach. 1, *Warrant for Arrest of Alien*. In its March 11, 2026 order on the Respondents' motion to dismiss, the Court accepted the Respondents' representation that Ms. O'Leary was arrested pursuant to an I-200 administrative warrant. *Order on Mot. to Dismiss* at 2 n.2 (ECF No. 27).

Immigration Appeals (BIA) the Immigration Judge's bond denial, which remains pending. *Pet.* ¶ 4.[3]

On January 21, 2026, Abigail Lima Da Silva O'Leary filed an unverified petition for writ of habeas corpus, which she later supplemented with a verified petition on February 19, 2026. *Id.*; *Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241* (ECF No. 1). In her petition, Ms. O'Leary alleges her bond hearing was constitutionally inadequate, depriving her of her due process right to "a meaningful custody hearing." *Pet.* ¶ 5. Ms. O'Leary's petition also challenges her conditions of confinement, explaining that, due to her asthma, she "faces urgent medical and safety concerns" regarding her risk of exposure to COVID-19. *Id.* ¶ 6.

### C. The Respondents Transfer the Petitioner outside the District of Maine and the Court Orders Her Released Pending the Merits of Her Habeas Petition

On January 21, 2026, shortly after Ms. O'Leary filed her petition, the Court issued a seventy-two-hour emergency stay, temporarily enjoining the Respondents from transferring Ms. O'Leary outside the District of Maine. *Emer. Order.* The following day, January 22, 2026, the Respondents filed an emergency motion requesting permission to transfer Ms. O'Leary to the ICE Boston Field Office, located at 1000 District Avenue, Burlington, Massachusetts, because Cumberland County Jail (CCJ), Ms. O'Leary's current detention site, had no additional bed space. *Resp'ts' Emer. Mot. to Transfer* at 1-2 (ECF No. 6). That same day, the Court entered the following order, granting the Respondents' emergency motion.

---

[3]    Ms. O'Leary's represents that her BIA remains pending as of February 19, 2026. The Court does not know whether her BIA remains pending after February 19, 2026.

> Based on Respondents' representations that a housing emergency exists at [CCJ] that makes transfer to Massachusetts imperative, and its further representation that the Court will have ongoing jurisdiction over the case and that Respondents will not raise venue as an issue in its responses, the Court hereby modifies the January 21, 2026 emergency stay to permit Ms. O'Leary's transfer to the District of Massachusetts consistent with Respondents' representations in its emergency transfer motion. Respondents are enjoined from transferring Ms. O'Leary outside the District of Massachusetts and District of Maine for the period of at least seventy-two hours from the date and time of this amended order. The Court further orders Respondents provide Ms. O'Leary reasonable access to counsel during the period of her detention in Massachusetts.

*Order* (ECF No. 7) (*Am. Emer. Order*).

The next morning, on January 23, 2026, Ms. O'Leary filed a motion requesting the Court issue an order requiring the Respondents to return Ms. O'Leary to the District of Maine. *Mot. to Modify Emer. Order and Other Relief* (ECF No. 8). In her motion, Ms. O'Leary alleged her transfer violated the Court's January 21, 2026 no-transfer order because the Respondents removed Ms. O'Leary from the District of Maine before the Court issued its amended emergency no-transfer order. *Id.* ¶ 10. Ms. O'Leary's motion also challenged the Respondents' stated emergency basis for their requested modified no-transfer order, alleging that CCJ, based on available information, "was not operating at capacity" but rather had "ample capacity" to house detainees, like Ms. O'Leary. *Id.* ¶ 8. Accordingly, Ms. O'Leary sought an order from this Court finding the Respondents violated the Court's January 21, 2026 no-transfer order, and as an appropriate sanction for this violation, an order requiring the Respondents to release Ms. O'Leary or, alternatively, to return her to CCJ or another appropriate facility within the District of Maine. *Id.* at 5.

Later that same day, January 23, 2026, the Respondents filed a motion to dismiss Ms. O'Leary's petition, *Mot. to Dismiss*.  The Respondents also filed a response to Ms. O'Leary's motion, confirming ICE transferred Ms. O'Leary outside the District of Maine before the Court issued its amended no-transfer order and acknowledging that this violated the Court's January 21, 2026 no-transfer order. *Resp. to Pet'r's Mot.* at 2 (ECF No. 9).  The Respondents further explained that they will no longer house immigration detainees at the CCJ.  *Resp. to Pet'r's Mot.* at 2.

Given these developments, the Court held a teleconference of counsel later that evening on January 23, 2026, and, upon the parties' agreement, issued the following order.

> In light of the Government's representation that Abigail Lima Da Silva O'Leary was transferred to Massachusetts in direct violation of this Court's Orders, ECF Nos. 2, 7, the Court ORDERS Ms. O'Leary's immediate release on personal recognizance, subject to standard conditions of release on personal recognizance, while the merits of her underlying habeas petition, ECF No. 1, are pending.  The Court further ORDERS the Government cannot re-detain Ms. O'Leary while the merits of her habeas petition are pending.

*Min. Entry* (ECF No. 12) (*Release Order*).  At the teleconference, the parties agreed the Court's release order resolved Ms. O'Leary's motion to return her to the District of Maine and set a schedule to complete briefing on the Respondents' motion to dismiss Ms. O'Leary's petition.  *Order Mooting Pet'r's Mot. to Modify Emer. Order and Other Relief* (ECF No. 13).

### D.    The Court's March 11, 2026 Order, Granting the Respondents' Motion to Dismiss the Petitioner's Habeas Petition

On Marh 11, 2026, the Court granted the Respondents' motion to dismiss.  The Court concluded that it lacked jurisdiction to review Ms. O'Leary's challenge to the

adequacy of her bond hearing and that her conditions of confinement claim were moot. *Order on Mot. to Dismiss*. In granting the Respondents' motion to dismiss, the Court acknowledged its January 23, 2026 release order would expire upon the Court's dismissal of Ms. O'Leary's verified petition, and clarified that the Respondents were no longer barred from re-detaining her. *Id*. at 15-16.

### E.    The Petitioner's Notice of Appeal and Motion for Continuation of Enlargement

On March 12, 2026, anticipating her appeal of the Court's order, Ms. O'Leary filed her motion to continue the Court's January 23, 2026 release order pending appeal. *Pet'r's Mot*. That same day, the Court held a teleconference of counsel, where the parties agreed to continue on an interim basis the Court's January 23 release order until the Court reviewed the merits her motion. *Min. Entry* (ECF No. 31); *Order* (ECF No. 32). On March 13, 2026, Ms. O'Leary filed her notice of appeal. *Notice of Appeal*. On March 23, 2026, the Respondents filed their opposition, *Resp'ts' Opp'n*, and on March 31, 2026, Ms. O'Leary filed her reply. *Pet'r's Reply*.

## II.    THE PARTIES' POSITIONS

### A.    The Petitioner's Motion for Continuation of Enlargement

Ms. O'Leary moves for a stay of the Court's March 11, 2026 order dismissing her habeas petition. *Pet'r's Mot*. She asks this Court to issue a stay in order to continue her release on personal recognizance pending resolution of her appeal of the Court's dismissal of her petition for a writ of habeas corpus. *Id*. Ms. O'Leary argues that Federal Rule of Appellate Procedure 23 governs the Court's decision to continue her release pending appeal. *Id*. at 3-12. She also argues that, applying the traditional

7

factors for a stay pending appeal, she has made a strong showing that she is likely to succeed on the merits of her appeal, that she will suffer irreparable harm absent a stay, that a stay would not substantially injure the Respondents, and the public interest lies in issuing the stay. *Id.* at 5-11. Separate from the traditional stay factors, however, Ms. O'Leary insists that Appellate Rule 23(d) provides an independent basis for her continued release. *Id.* at 11-12.

### B.   The Respondents' Opposition

The Respondents oppose Ms. O'Leary's motion. First, the Respondents argue that Federal Rule of Appellate Procedure 8, not Rule 23, is the proper basis to review her motion, because Rule 23 authorizes only appellate courts and appellate judges to review the custody status for prisoners granted habeas relief. *Resp'ts' Opp'n* at 2-3. Regardless of the proper procedural basis, the Respondents argue the traditional stay factors weigh against granting Ms. O'Leary's motion. *Id.* at 3-8.

### C.   The Petitioner's Reply

In reply, Ms. O'Leary maintains Rule 23(d) governs her motion and that the Respondents bear the burden of showing special reasons warranting a change in custody. *Pet'r's Reply* at 1-3. Assuming Rule 8 applies, Ms. O'Leary maintains the traditional stay factors favor granting her motion. *Id.* at 3-7.

## III.   LEGAL STANDARD

"[A]s part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal." *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 9-10 (1942) (footnote omitted); *see also* FED. R. CIV. P. 62; FED. R. APP. P. 8. In reviewing a motion to stay

a judgment pending appeal, the court considers the following factors: "(1) [W]hether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of Bos.*, 996 F.3d 37, 44 (1st Cir. 2021) (alteration in original) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

"The first two factors 'are the most critical,'" *id.* (quoting *Nken*, 556 U.S. at 434), and the third and fourth factors "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. Lastly, staying a judgment pending appeal is "an exercise of judicial discretion" that is "dependent upon the circumstances of the particular case." *Id.* at 433 (quoting *Virginian R. Co. v. United States*, 272 U.S. 658, 672-73 (2009)); *see also Hilton v. Braunskill*, 481 U.S. 770, 777 (1987) ("[T]he traditional stay factors contemplate individualized judgments in each case"). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken*, 556 U.S. at 434-35.

## IV.   DISCUSSION

Although specific rules of procedure empower the Court to stay its judgment pending appeal, *see e.g.*, FED. R. CIV. P. 62; FED. R. APP. P. 8 and 23, the Court's stay power does not lie exclusively in any particular rule. Rather, the power to stay an order pending review of its legality is "'inherent,' preserved in the grant of authority to federal courts to 'issue all writs necessary or appropriate in aid of their respective

9

jurisdictions and agreeable to the usages and principles of law.'" *Nken*, 556 U.S. at 426 (first citing 28 U.S.C. § 1651(a); then citing *In re McKenzie*, 180 U.S. 536, 551 (1901)); *cf. Scripps-Howard Radio*, 316 U.S. at 17 (Congress's failure expressly to confer the authority in a statute allowing appellate review should not be taken as an implicit denial of the court's stay power, "a power as old as the judicial system of the nation"). At bottom, the Court's stay power is "an exercise of judicial discretion," and "[t]he propriety of its issue is dependent upon the circumstances of the particular case." *Virginian. R. Co.*, 272 U.S. at 672.

In this matter, the parties disagree on the applicable procedural rule governing the Court's stay analysis. First, the parties dispute whether Appellate Rule 8 or 23 applies. Next, assuming Rule 23 applies, the parties dispute whether Rule 23(b) or 23(d) supplies the applicable standard.

First, the Court concludes Rule 23(d) is likely inapplicable to this case. Next, the Court concludes Rule 23(b), which gives the district court authority to release a habeas petitioner while a legitimate appeal challenging a decision not to release is pending before the court of appeals, may authorize the Court to act in this situation, although the Court acknowledges it is not a perfect fit. Finally, independent of Rule 23(b)'s applicability, the Court separately analyzes Ms. O'Leary's motion under the traditional stay factors pursuant to Rule 8 and the Court's inherent stay power. The Court concludes that the stay factors weigh in Ms. O'Leary's favor. The Court therefore stays its judgment from the Court's March 11, 2026 order pending Ms. O'Leary's appeal.

10

### A.    Federal Rule of Appellate Procedure 23

Ms. O'Leary argues Rule 23(d) "provides an independent and self-executing basis" for her continued release. *Pet'r's Mot.* at 11 (citing FED. R. APP. P. 23(d)). As a habeas petitioner who obtained release, she argues the Respondents bear the burden of demonstrating "special reasons" that the Court's release order should not continue in effect pending appeal. *Id.* at 11-12; *Pet'r's Reply* at 1-3. The Respondents argue Rule 23 is inapplicable in this case, insisting that Rule 8 supplies the basis for Ms. O'Leary's stay request. *Resp'ts' Opp'n* at 2-3. To the extent Rule 23 applies at all, the Respondents aver, it is through Rule 23(b), not Rule 23(d). *Id.*

### 1.    Federal Rule of Appellate Procedure 23(d)

Rule 23(d) provides a mechanism for a habeas petitioner to challenge, at the appellate level, the district court's decision either to detain or release the petitioner. *See Braunskill*, 481 U.S. at 774 ("Rule 23(d) creates a presumption of correctness for the order of a district court entered pursuant to Rule 23[ ], whether that order enlarges the petitioner or refuses to enlarge him," which "may be overcome in the appellate court 'for special reasons shown.'") (quoting FED. R. APP. P. 23(d)). However, Rule 23(d)'s plain language requiring "special reasons shown to the court of appeals or the Supreme Court, or to a judge or justice of either court," suggests the rule is upward-looking, and not for the district court to revisit. FED. R. APP. P. 23(d). The Court therefore agrees with the Respondents that Rule 23(d) is likely inapplicable to Ms. O'Leary' motion before this Court.

11

### 2.      Federal Rule of Appellate Procedure 23(b)

Rule 23(b) gives the court discretion to release a habeas petitioner pending appellate review of a decision not to release.  *See Ostrer v. United States*, 584 F.2d 594, 597 n.1 (2d Cir. 1978).  Specifically, Rule 23(b) provides:

> While a decision not to release a prisoner is under review, the court or judge rendering the decision . . . may order that the prisoner be:
>
>> (1) detained in the custody from which release is sought;
>>
>> (2) detained in other appropriate custody; or
>>
>> (3) released on personal recognizance, with or without surety.

FED. R. APP. P. 23(b).

Rule 23 refers to a court's "initial order governing the prisoner's custody or release," i.e., either a "decision not to release" under Rule 23(b) or a "decision ordering release" under Rule 23(c).  *See* FED. R. APP. P. 23(b)-(d).  The Respondents insist that because the Court concluded that the Immigration Nationality Act (INA) stripped this Court of its jurisdiction to review Ms. O'Leary's habeas petition, *see Order on Mot. to Dismiss* at 10-14, the Court therefore never issued an initial order regarding her custody or release under Rule 23.

The problem with the Respondents position is that the Court did order Ms. O'Leary released pending review of her habeas petition and then later also authorized the Respondents to re-detain her.  *See Release Order*; *Order on Mot. to Dismiss*. Although the Court's release order was a sanction against the Respondents for violating the Court's order, s*ee Release Order*; *see also Emerg. Order*, that sanction not only ordered the Respondents to release Ms. O'Leary but further prohibited them

12

from re-detaining her until the Court issued its ruling on her habeas petition. In the Court's view, the Marh 11, 2026 order dismissing Ms. O'Leary's petition and authorizing the government to re-detain her is in effect a decision not to release—a judicial imprimatur permitting detention—under Rule 23(b). The Court interprets the language of Rule 23(b) in light of its underlying purpose, which is to give the district court authority to release a habeas petitioner while a legitimate appeal challenging a decision not to release the petitioner is pending before the court of appeals. Given the unique circumstances of this case, the Court determines Rule 23(b) authorizes the Court to revisit its decision pending appeal. In other words, although the Court recognizes Rule 23(b) may not be a precise fit, interpreted in light of its purpose, the Court determines Rule 23(b) authorizes it to act in this situation.

### 3.    Applicability of Federal Rule of Appellate Procedure 8

In any event, regardless of whether the Court's dismissal of Ms. O'Leary's habeas petition for lack of jurisdiction precludes Rule 23(b)'s applicability, Rule 8 of the Federal Rules of Appellate Procedure confirms the authority of the district court to issue a stay pending appeal, an authority granted by the All Writs Act. 28 U.S.C. § 1651(a); FED. R. APP. P. 8(a) advisory committee note to 1967 adoption. Rule 8 requires that a motion to stay a district court order pending appeal must first be presented to the district court. FED. R. APP. P. 8(a)(1)(A).

Thus, whether under Rule 8 or the All Writs Act, the Court retains its authority to stay the effect of its judgment pending appeal, which provide an independent basis for this Court to stay its judgment pending appeal. *See Nken*, 556

U.S. at 426 (citation omitted); *see also* 28 U.S.C. § 1651(a); FED. R. CIV. P. 62; FED. R. APP. P. 8.

## B.     The Traditional Stay Factors

Weighing the traditional stay factors, the Court concludes a stay pending appeal should issue. To preserve the status quo while Ms. O'Leary seeks clarity from the First Circuit on a serious legal question and considering the irreparable harm she will suffer absent a stay and the minimal harm to the Respondents, the Court stays its judgment from its March 11, 2026 order granting the Respondents motion to dismiss and continues Ms. O'Leary's release pending her First Circuit appeal.

### 1.     Likelihood of Success on the Merits or Serious Legal Question

Ms. O'Leary argues that she satisfies the first prong of the Court's stay analysis, the likelihood of success on the merits, because she raises a significant question of law warranting appellate review. *Mot.* at 5-6; *Pet'r's Reply* at 3-4. Specifically, she points to the First Circuit's silence since issuing its opinion in *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021), on a question of constitutional law regarding the scope of a district court's jurisdiction to review habeas petitions challenging aspects of an immigration bond hearing, among which the district courts within the First Circuit are varied in their approach. *Id.* In opposition, the Respondents maintain that Ms. O'Leary has failed to make a strong showing of success on the merits because she "offer[s] no evidence to suggest that the First Circuit may stray from its holding in *Hernandez-Lara.*" *Resp'ts' Opp'n* at 5.

In the First Circuit and elsewhere, the requirement that a party seeking a stay

14

demonstrate a likelihood of success on appeal "has not been interpreted or applied literally." *Cantebury Liquors & Pantry v. Sullivan*, 999 F. Supp. 144, 149 (D. Mass. 1998) (citing caselaw). Instead, "[w]hen the request for a stay is made to a district court, common sense dictates that the moving party need not persuade the court that it is likely to be reversed on appeal." *Id.* at 150. Rather, "the movant must only establish that the appeal raises serious and difficult questions of law in an area where the law is somewhat unclear." *Id.*; *Tax-Free Fixed Income Fund for P.R. Residents, Inc. v. Ocean Capital LLC*, No. 22-1101 (GMM), 2024 U.S. Dist. LEXIS 123183, at *20 n.6 (D.P.R. July 11, 2024) ("Courts may consider the existence of a 'serious legal question' in ruling on a motion to stay pending appeal"); *Guifu Li v. A Perfect Day Franchise, Inc.*, No. 5:10-cv-01189-LHK, 2011 U.S. Dist. LEXIS 60814, at *6-8 (N.D. Cal. June 8, 2011) ("The moving party need only show that his appeal raises serious legal questions, or has a reasonable probability or fair prospect of success") (quotation omitted).

On appeal, Ms. O'Leary challenges the Court's conclusion that it lacked jurisdiction to review her habeas petition that challenged whether the Immigration Judge applied the correct burden of proof and evidentiary standard as required by the First Circuit's decision in *Hernandez-Lara*. *Mot.* at 6. In dismissing her petition, the Court concluded that the Petitioner, consistent with *Hernandez-Lara*, "received constitutionally required due process when she appeared before an Immigration Judge who reviewed and heard evidence, held the Government to its burden of proof, and found by clear and convincing evidence that [she] is a danger to the community."

15

*Order on Mot. to Dismiss* at 12.  The Court determined that the INA stripped the Court's jurisdiction to conduct a more searching review of the alleged inadequacy of her bond hearing, including the Immigration Judge's failure to consider alternatives to detention.  *Id.* at 10-14.

However, in doing so, the Court acknowledged the First Circuit's silence Ms. O'Leary's specific challenge to the adequacy of her bond hearing, refusing to "expand[ ] First Circuit law without express authority from the First Circuit." *Order on Mot. to Dismiss* at 12 n.4.  In the Court's view, any challenge beyond whether the Immigration Judge held the government to its burden to prove danger to the community by clear and convincing evidence amounted to an impermissible review of an "immigration judge's weighing of the evidence and exercise of discretion with respect to dangerousness," a task the INA specifically removes from the district court's jurisdiction.  *Id.* at 13 (quoting *Diaz Ortiz v. Smith*, 384 F. Supp. 3d 140, 144 (D. Mass. 2019)).

While this Court is wary to read *Hernandez-Lara* so expansively as to require a more searching review of the Immigration Judge's decision to deny bond, including consideration of alternatives to detention, other district courts within the First Circuit have consistently done so.  *See Costa v. McDonald*, No. 25-CV-13469-AK, 2026 U.S. Dist. LEXIS 27125, at *4-5 (D. Mass. Feb. 10, 2026) (concluding "that by failing to address less restrictive alternatives to detention, the Government failed to provide Petitioner with constitutionally sufficient procedure") (collecting cases); *Garcia v. Hyde*, 2025 U.S. Dist. LEXIS 253787, at *26-27 (D.R.I. Dec. 3, 2025) (concluding the

evidence considered at the petitioner's bond hearing could not as a matter of law support the Immigration Judge's denial of bond on a finding of current flight risk); *Mayancela Mayancela v. FCI Berlin*, No. 25-cv-00348-LM-TSM, 2025 U.S. Dist. LEXIS 226280, at *6-7 (D.N.H. Nov. 18, 2025) (holding that court had jurisdiction to review whether an Immigration Judge applied the constitutionally mandated burden of proof at bond hearing); *Doe v. Tompkins*, No. 18-12266-PBS, 2019 U.S. Dist. LEXIS 22616, at *5 (D. Mass. Feb. 12, 2019) (ordering a new bond hearing at which "[t]he immigration court shall properly allocate the burden of proof and consider alternative methods to ensure the safety of the community and [the petitioner's] future appearances like GPS monitoring).

Furthermore, the INA is a complex statute, including its jurisdiction-stripping provisions at issue in Ms. O'Leary's appeal, 8 U.S.C. §§ 1226(e) and 1252(b)(9). Although the First Circuit has provided guidance regarding the scope of these statutory provisions in a handful of cases, *see e.g.*, *Hernandez-Lara*, 10 F.4th at 41; *Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 10-11 (1st Cir. 2007) (holding that district courts retain habeas jurisdiction over claims "collateral to" removal proceedings, including challenges to the "legality of detention in the immigration context"), the First Circuit has yet to settle the varied approaches of the district courts within the First Circuit that are central to Ms. O'Leary's challenge on appeal.  *See Doe v. Tompkins*, 11 F.4th 1, 2 (1st Cir. 2021) (refusing to reach whether an Immigration Judge must consider alternatives to detention because the parties had not raised the issue on appeal); *Brito v. Garland*,

22 F.4th 240, 255-56 (1st Cir. 2021) (refusing to reach the merits of the petitioners' alternatives-to-detention claim because they failed to exhaust their administrative remedies).

Finally, her forthcoming appeal presents a question of first impression, regarding the scope of district courts' authority to review due process challenges to an Immigration Judge's decision to deny an immigration detainee bond, as circumscribed by 8 U.S.C. §§ 1226(e) and 1252(b)(9). *Mot.* at 5. Particularly, whether the First Circuit's holding in *Hernandez-Lara* that due process requires the government bear the burden to prove danger or flight risk also requires the Immigration Judge to consider alternatives to detention.

Accordingly, the Court agrees with Ms. O'Leary that her appeal raises a serious question of law for the First Circuit's review. Considering the law's complexity in this area combined with the First Circuit's silence and the variance among district courts within the First Circuit as to the scope of a district court's jurisdiction to review an immigration detainee's challenge to the constitutional adequacy of their bond hearing, the Court concludes the Petitioner presents a serious legal question on appeal, satisfying the first prong of the Court's stay analysis. *See Providence J. Co. v. Fed. Bureau of Investigation*, 595 F.2d 889, 890 (1st Cir. 1979); *see also Walmer v. United States Dep't of Defense*, 52 F.3d 851, 854 (10th Cir. 1995) (For a legal question to be "serious," it must be a "question[ ] going to the merits [that is] so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation"); *Guifu Li*, 2011 U.S. Dist.

18

LEXIS 60814 at *10 ("[S]erious legal questions often concern constitutionality") (collecting cases); *Pokorny v. Quixtar Inc.*, No. 07-00201 SC, 2008 U.S. Dist. LEXIS 91951, at *4 (N.D. Cal. Apr. 17, 2008) (concluding a movant's appeal asking the Ninth Circuit to resolve a split in authority regarding enforceability of the arbitration agreement raised a serious legal question).

### 2.    Irreparable Harm Absent a Stay

Ms. O'Leary argues she will be irreparably harmed if a stay is not granted, because the Respondents may re-detain her pending removal proceedings. *Mot.* at 6-8; *Pet'r's Reply* at 4-6. As the Petitioner explains, re-detaining her would deprive her of her physical liberty, which is per se irreparable harm. *Mot.* at 6. The Respondents argue Ms. O'Leary cannot show irreparable harm because she "has provided no evidence to suggest that she is likely to be detained prior to the conclusion of her BIA appeal or First Circuit appeal." *Resp'ts' Opp'n* at 7.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing See *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)); *Hernandez-Lara*, 10 F.4th at 28 ("[T]he fact that some [immigration] detention is permissible does not change the fact that a detainee suffers significant liberty deprivations").

The Court agrees that Ms. O'Leary will be irreparably harmed absent a stay. Ms. O'Leary asserts "the most elemental of liberty interests—the interest in being free from physical detention by [the] government." *Hamdi v. Rumsfeld*, 542 U.S. 507,

19

529 (2004). As a noncitizen subject to discretionary detention pursuant to 8 U.S.C. § 1226(a), Ms. O'Leary vindicates her due process rights through a bond hearing before an Immigration Judge, the very procedural right her appeal claims she was denied. *Hernandez-Lara*, 10 F.4th at 41. Accordingly, re-detaining Ms. O'Leary pending her appeal would not only irreparably harm her but significantly undermine the purpose of her appeal. *See Jimenez v. Nielsen*, 326 F.R.D. 357, 361 (D. Mass. 2018) ("Unlawful detention causes irreparable harm"); *accord Cruz v. Bondi*, No. 25-cv-262-JJM-PAS, 2025 U.S. Dist. LEXIS 232476, at *15 (D.R.I. Nov. 26, 2025) (describing continued immigration detention as a severe form of irreparably injury) (quotation omitted).

Finally, the Court is not convinced by the Respondents' argument that the prospect of Ms. O'Leary's re-detention is too speculative to constitute irreparable harm. Considering the Respondents' position at every stage of this case has been to oppose her release, the Court is unconvinced by the Respondents' argument that the government is unlikely to re-detain Ms. O'Leary prior to the conclusion of her First Circuit appeal. *Resp'ts' Opp'n* at 7. When Respondents arrested Ms. O'Leary on October 9, 2025, pursuant to 8 U.S.C. § 1226(a) they elected to continue detaining her pending removal rather than release her on bond. *Pet.* ¶ 2. At her October 16, 2025 bond hearing before an Immigration Judge, the Respondents opposed Ms. O'Leary's bond request, arguing she posed a danger to the community. *Id.* ¶ 3; *Mot. to Dismiss*, Attach. 2, *Order of the Immigration Judge*; *id.*, Attach. 3, *Bond Memo*. Moreover, the Respondents advocated for Ms. O'Leary's continued detention when they opposed her

habeas petition challenging her bond denial. *See Mot. to Dismiss.* Lastly, the Respondents actively oppose Ms. O'Leary's motion to continue her release yet simultaneously argue her re-detention is speculative. The Respondents cannot have it both ways. The Court therefore concludes that the Petitioner has demonstrated irreparable harm without a stay. *See Nken*, 556 U.S. at 434-35 (Irreparable harm absent a stay requires more than a mere "possibility" of irreparable injury).

### 3.    Injury to the Respondents and the Public Interest

The Respondents maintain that the remaining factors do not support issuing a stay. *See id.*, 556 U.S. at 435 (noting harm to the opposing party and the public interest merge when the government is the opposing party). They argue that both the Immigration Judge's finding that the Petitioner is a danger to her community and the evidence in the record support "an inference that an order barring Respondents from re-detaining her may injure her community." *Resp'ts' Opp'n* at 8.

Ms. O'Leary argues the Respondents are not substantially injured by her continued release and that the public interest favors her continued release pending her appeal. *Mot.* at 8-11. According to Ms. O'Leary, she has complied with every condition of her release on personal recognizance and the Respondents have not shown that she poses "any concrete risk to the community or the integrity of the immigration proceedings." *Id.* at 8. As for the public interest, Ms. O'Leary insists the public interest favors preserving the status quo pending appeal and the welfare of families and children, including the Petitioner's autistic son, for whom Ms. O'Leary is the primary caregiver. *Id.* at 9-10.

In the Court's view, the injury to the Respondents is minimal. Ms. O'Leary's release is the result of a sanction the Court issued against the Respondents for violating this Court's prior order. *See Release Order.* Ms. O'Leary also reports that she continues to comply with her conditions of release on personal recognizance, and the Respondents have not presented the Court with any information to the contrary. There is also a strong public interest in preserving the status quo in cases like this one in which the appellant's freedom from detention is central on appeal.[4] Furthermore, given that Ms. O'Leary has satisfied the two "most critical" factors—a serious legal question on appeal and irreparable harm absent a stay—the Court concludes that a stay should issue at this time. *Bos. Parent Coal. for Acad. Excellence,* 996 F.3d at 44 (quoting *Nken,* 556 U.S. at 434).

Moreover, the unique nature of this case warrants staying the Court's judgment, providing for Ms. O'Leary's continued release pending the conclusion of her appeal to the First Circuit. *Nken,* 556 U.S. at 433 (The decision to stay a judgment pending appeal is "an exercise of judicial discretion" that is "dependent upon the circumstances of the particular case") (quoting *Virginian R. Co.,* 272 U.S. at 672-73); *see also Braunskill,* 481 U.S. at 777 ("[T]he traditional stay factors contemplate individualized judgments in each case"). Ms. O'Leary raises a serious legal question on appeal, and without a stay she faces severe harm—physical detention by the

---

[4] Although the Court acknowledges the Immigration Judge's conclusion that the Petitioner poses a danger to her community, the Petitioner's appeal challenges the constitutional propriety of that determination. As the Court explained in its March 11, 2026 order, the INA strips this Court's jurisdiction to sit in judgment of the Immigration Judge's weighing of the evidence and the Court passes no judgment on the Immigration Judge's conclusion.

22

government—far beyond any harm the Respondents might suffer if the Court issues a stay.  Importantly, Ms. O'Leary's continued release preserves the status quo while she seeks guidance from the First Circuit on a question of constitutional law that affects her most elemental of liberty interests.  S*ee Providence J. Co.*, 595 F.2d at 890 ("Where . . . the denial of a stay will utterly destroy the status quo, irreparably harming appellants, but the granting of a stay will cause relatively slight harm to appellee, appellants need not show an absolute probability of success in order to be entitled to a stay"); *See also Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986); *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981); *Tax-Free Fixed Income Fund*, 2024 U.S. Dist. LEXIS 123183 at *20.

## V.    CONCLUSION

The Court GRANTS Abigail Lima Da Silva O'Leary's Motion for Continuation of Enlargement Pending Appeal (ECF No. 29).  Accordingly, the Court CONTINUES its January 23, 2026 release order (ECF No. 12) pending the resolution of her appeal of the Court's March 11, 2026 Order on Motion to Dismiss (ECF No. 27) to the United States Court of Appeals for the First Circuit.  The Court further ORDERS the Respondents not to re-detain Ms. O'Leary pending her appeal absent further order of this Court or the First Circuit.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 1st day of May, 2026

23